**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **NATHAN COZART,** | ) | |
| **#2271,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 3:23-CV-00031** |
| | ) | |
| **v.** | ) | **Judge Trauger** |
| | ) | **Magistrate Judge Newbern** |
| **JERRY SPANGLER,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM OPINION</u>**

Nathan Cozart, a pre-trial detainee in the custody of the Rutherford County Jail in Murfreesboro, Tennessee, filed this pro se action under 42 U.S.C. § 1983 against f/n/u Dawson, alleging violations of Plaintiff's civil rights. (Doc. No. 1). Plaintiff later filed a supplement (Doc. No. 6) to the complaint.

The complaint as supplemented is before the court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

**I.      PLRA Screening Standard**

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

1

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520121 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## II.    Section 1983 Standard

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ."  To state a claim under Section 1983, a plaintiff must allege and show two elements:  (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

## III.    Alleged Facts

The complaint alleges that, on December 22, 2022, the plaintiff was in line to receive his medication in his housing unit (3-B). Officer Dawson, who is Black, entered the pod to converse with some Black inmates. Five minutes later, Officer Dawson joined the "med pass line" and noticed the plaintiff and another inmate conversating. Officer Dawson told the plaintiff and that inmate, both of whom are White, to "shut the fuck up during med pass." (Doc. No. 1 at 6). The

plaintiff "made the point of saying that it seemed like he [Dawson] only singles out [C]aucasian inmates for any kind of breach of policy because he was openly conversing with [B]lack inmates and singled out the only two [W]hite inmates talking." (*Id*.)

Officer Dawson then ordered the plaintiff to be on lock down for the rest of the night. While speaking with the plaintiff back at his cell, Officer Dawson yelled profanities at the plaintiff and threatened that he (Dawson) intended to "wipe the floor with [the plaintiff's] skinny ass" and "I'll kill you, bitch ass [W]hite boy." (*Id*. at 7).

The plaintiff filed a grievance about the incident. Since then, the plaintiff has been experiencing anxiety, depression, night terrors, and panic attacks. Officer Dawson has not been sanctioned, and he is still permitted to be around the plaintiff. The plaintiff has begun taking anti-anxiety medication. As relief, he seeks $100,000 in damages and "authorization of pressing criminal charges against" Officer Dawson. (Doc. No. 6 at 1).

## IV. Analysis

The plaintiff brings this action against f/n/u Dawson, an officer employed by the Rutherford County Adult Detention Center. The plaintiff sues Dawson in his individual and official capacities. (Doc. No. 1 at 2). The complaint alleges three claims under Section 1983: an excessive force claim "because [Dawson's] threats were not made in a good-faith attempt to maintain or restore order, but maliciously and sadistically to cause harm"; a "due process/equal protection" claim because the plaintiff believes he was the victim of "racial discrimination" when "Officer Dawson chose two inmates who were white to harass out of other similarly situated people" (*Id*. at 8); and a retaliation claim because the plaintiff fears for his life after reporting Officer Dawson's actions. (Doc. No. 6 at 1).

3

The court will address the plaintiff's excessive force claim first. At the time of the alleged excessive force by Officer Dawson, the plaintiff was a pre-trial detainee. The legal status of an alleged victim of excessive force is significant because the conduct of the offending officer must be analyzed under the standard appropriate to the applicable constitutional provision. *See Coley v. Lucas Cnty., Ohio*, 799 F.3d 530, 538-39 (6th Cir. 2015) The Fourteenth Amendment's Due Process Clause protects a pre-trial detainee from the use of excessive force that amounts to punishment. *See Kingsley*, 576 U.S. at 397. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)

To state a claim for excessive force pursuant to the Fourteenth Amendment, a pretrial detainee must demonstrate that an officer used force against him and that the conduct was "objectively unreasonable." *Id.* at 389. The inquiry is highly fact-dependent and must take into account the "perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id*. Whether there was excessive force depends on whether the conduct was objectively reasonable under the specific circumstances of the case. Considerations include (1) "the relationship between the need for the use of force and the amount of force used"; (2) "the extent of the plaintiff's injury"; (3) "any effort made by the officer to temper or to limit the amount of force"; (4) "the severity of the security problem at issue"; (5) "the threat reasonably perceived by the officer"; and (6) "whether the plaintiff was actively resisting." *Id*. at 397.

Here, the complaint does not allege that Officer Dawson used any force against the plaintiff. Instead, the complaint alleges that Officer Dawson threatened the plaintiff with the use of force. In this Circuit, courts have found that "threats, harassment, and verbal abuse directed towards prisoners fail to rise to the level of an Eighth Amendment constitutional violation . . . ." *See Young v. Linton*, No. 2:21-cv-00060-JRG-CRW, 2022 WL 141673, at *3 (E.D. Tenn. Jan. 14,

4

2022). But the plaintiff here is not a prisoner; he is a pretrial detainee. The Sixth Circuit has held that, in cases involving a plaintiff "who was in the process of being booked into jail when the events at issue occurred" (as opposed to a convicted prisoner), the Fourth Amendment governs. *Evans v. Plummer*, 687 F. App'x 434, 443 (6th Cir. 2017). An officer's subjective intent is irrelevant, and "what matters," the Sixth Circuit explained, "is whether [the officer's] actions were objectively unreasonable." *Id.* (citing *Kingsley*). In *Evans*, the Sixth Circuit shed some light on what type of actions are objectively reasonable when the court reversed the district court's denial of qualified immunity to an officer who had pointed a taser at Evans (who at that time was in the process of being booked), finding that "'in light of pre-existing law,' it was not apparent that pointing a taser at Evans violated the Fourth Amendment." *Id.* at 444 (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). Here, the complaint does not allege that Officer Dawson aimed his firearm or any other weapon at the plaintiff when he threatened the plaintiff with force, unlike the officer in *Evans*.

True, some courts in other Circuits have found that "[a] threat of deadly force made merely to inflict gratuitous fear and punishment when the party has both the opportunity to carry out the threat and evidences the intent to do so may state a cognizable claim under the Eighth and Fourteenth Amendments." *Abram v. Rackley*, No. 2:16-cv-2004 MCE KJN P, 2016 WL 6038172, at *2 (E.D. Cal. Oct. 14, 2016) (citing *Burton v. Livingston*, 791 F.2d 97, 100 (8th Cir. 1986) (finding that drawing gun and terrorizing prisoner with threats of death while using racially offensive language states First Amendment, due process, and equal protection claims) and *Parker v. Asher*, 701 F. Supp. 192, 194 (D. Nev. 1988) (holding that threatening to shoot inmate with taser gun merely to inflict gratuitous fear and punishment states claim under Eighth and Fourteenth Amendments)). But the Sixth Circuit "has never found that pointing a taser, as opposed to actually

5

discharging one, constitutes the use of excessive force." *Evans*, 687 F. App'x at 442. *See Elnicki v. City of Rutland*, No. 2:17-cv-00048, 2019 WL 131858, at *6 & n.3 (D. Vermont Jan. 8, 2019) (citing *Evans* and finding that an officer's "*show* of force without the *use* of force [when making an arrest] is insufficient to establish a constitutional violation.") (emphasis in original). The *Evans* holding suggests that, in this Circuit, a pretrial detainee cannot prevail on an excessive force claim when an officer makes a verbal threat of physical harm without using force, even if the officer brandishes a weapon such as a taser while making the threat. Consequently, the court is unable to find that the plaintiff has stated a colorable excessive force claim under Section 1983 against Officer Dawson in his individual capacity. The claim will be dismissed.

However, as a sister court recently recognized, a pretrial detainee's allegations that an officer threatened him with force can, under some circumstances, support a retaliation claim. *See Young*, 2022 WL 141673, at *4 ("While Plaintiff's allegation that Defendant Linton yelled at him for being too slow while escorting him to court on one occasion appears to be the type of idle 'verbal harassment' that does not rise to the level of a constitutional violation and thus is subject to dismissal, the remainder of the threats, verbal abuse, and harassment that Plaintiff attributes to Defendant Linton support [the pretrial detainee's] claim for retaliation . . . ."). Indeed, in his supplement to the complaint, the plaintiff here alleges that he filed this lawsuit "due to fearing for [his] life and retaliation . . . ." (Doc. No. 6 at 1) (emphasis added). The plaintiff states that, after he complained and filed a grievance about Officer Dawson's actions of favoring Black inmates over White inmates, Officer Dawson threatened to kill the plaintiff and continues to visit the plaintiff's housing area, which the plaintiff finds intimidating and terrifying. (Doc. No. 1 at 7-8, Doc. No. 6 at 1).

A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). To establish a prima facie case of retaliation within the context of Section 1983, a plaintiff must prove that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the defendant's conduct was substantially motivated at least in part by retaliation for the plaintiff's protected speech and conduct. *Id*. at 394-99. In addition to proving a retaliatory motive, the plaintiff must establish that the alleged discriminatory action was punitive in nature by showing other than *de minimis* harm resulting from it. *See Ingraham v. Wright*, 430 U.S. 651, 674 (1977); *Thaddeus-X,* 175 F.3d at 396. A plaintiff has the burden of proof on all three elements. *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003). The court finds that the plaintiff's allegations of retaliation are sufficient to state a nonfrivolous claim of First Amendment retaliation.

First, filing grievances through an inmate grievance process is protected conduct. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Likewise, the plaintiff's initiation of litigation is protected speech under the First Amendment. *See Horn v. Hunt*, No. 2:15-cv-220, 2015 WL 5873290, at *5-6 (S.D. Ohio Oct. 8, 2015) ("[C]ourts have recognized that an inmate's exercise of First Amendment rights is not limited solely to filing grievances or accessing the courts"; "[o]nce a prisoner makes clear his intention to resort to official channels to seek a remedy for ill treatment by a prison employee, retaliation against the petitioner" implicates First Amendment protections) (citing cases).

Second, being threatened with bodily injury and death would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Thaddeus-X*, 175 F.3d at 398 (adverse action "threshold is intended to weed out only inconsequential actions, and is not a means

whereby solely egregious retaliatory acts are allowed to proceed"). Third, the plaintiff alleges that Officer Dawson's threats were motivated by the plaintiff's protected conduct. *See Hill v. Lappin*, 630 F.3d 468, 475-76 (6th Cir. 2010) (retaliatory motive can be supported by circumstantial evidence including "the disparate treatment of similarly situated individuals or the temporal proximity between the prisoner's protected conduct and the official's adverse action"). Finally, the plaintiff alleges that he has suffered anxiety, depression, panic attacks, and night terrors as a result of Officer Dawson's retaliatory behavior such that the plaintiff now receives medication for his mental health issues. Consequently, the court finds that the complaint states a colorable First Amendment retaliation claim under Section 1983 against Officer Dawson in his individual capacity. This claim will proceed for further development. *See Young*, 2022 WL 141673, at *3-4 (permitting pretrial detainee's Section 1983 retaliation claim to proceed where officer "verbally abused, harassed, and threatened" pretrial detainee "soon after [the pretrial detainee] complained to other officers about his overcrowded cell").

Next, the court considers the plaintiff's claim of racial discrimination. The plaintiff alleges that Officer Dawson treated White inmates differently, and less favorably, than Black inmates. The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state an equal protection claim, a plaintiff must show that he was intentionally discriminated against based on his membership in a suspect class. *Washington v. Davis*, 426 U.S. 229, 239 (1976); *Booher v. United States Postal Service*, 843 F.2d 943, 944 (6th Cir. 1988) (stating that a plaintiff must show that he "was victimized because of some suspect classification, which is an essential element of an equal protection claim"). Also, the plaintiff must prove that he was treated differently from those who are similarly situated to him. *Id*. at 270 n.21. To be similarly situated, "the comparative

8

[prisoner] must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it." *Umani v. Mich. Dep't Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)); *see also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 586 (6th Cir. 1992).

Here, the complaint fails to allege that the plaintiff is a member of a protected class. In addition, the plaintiff's allegations are insufficient to demonstrate that he suffered disparate treatment in relation to similarly situated others. While the complaint alleges that Officer Dawson singled out the two White inmates for talking during the med pass line and chose not to enforce the "no talking while in the med pass line" rule as to Black inmates, the complaint does not allege that the Black inmates were in the med pass line while conversing, unlike the plaintiff and the other White inmate, who were in the med pass line while conversing. Thus, the plaintiff has not alleged that he was treated differently than others who were similarly situated to him.

Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under Section 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff's conclusory allegation that he was denied equal protection therefore fails to state a claim under Section 1983 upon which relief can be granted. The claim against Officer Dawson in his individual capacity therefore will be dismissed.

As to the plaintiff's excessive force and equal protection claims against Officer Dawson in his official capacity, when a defendant is sued in his or her official capacity as an employee of the government, the lawsuit is directed against "the entity for which the officer is an agent." *Pusey v.*

*City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993). The complaint alleges that Officer Dawson is employed by the Rutherford County Jail in Murfreesboro, Tennessee. Thus, the plaintiff's official capacity claims against Officer Dawson are claims against Dawson's employer, Rutherford County, Tennessee.

A claim of governmental liability requires a showing that the alleged misconduct is the result of a policy, statement, regulation, decision or custom promulgated by Rutherford County or its agent. *Monell Dep't of Social Svcs.,* 436 U.S. 658, 690-691 (1978). In short, for Rutherford County to be liable to the plaintiff under Section 1983, there must be a direct causal link between an official policy or custom and the alleged violation of the plaintiff's constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Burgess v. Fisher*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell,* 436 U.S. 658, 693); *Regets v. City of Plymouth*, 568 F. App'x 380, 2014 WL 2596562, at *12 (6th Cir. 2014) (quoting *Slusher v. Carson*, 540 F.3d 449, 456-57 (6th Cir. 2008)). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance or acquiescence of federal rights violations. *Burgess*, 735 F.3d at 478.

Here, the allegations of the complaint are insufficient to state a claim for municipal liability under Section 1983 against Rutherford County. The complaint mentions no specific policy that is applied unequally to White and Black inmates. Under the facial plausibility standard, a complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). Without any detail of specific actions or inactions of Officer Dawson, or of any policy, custom, or practice of Rutherford County, that

resulted in the plaintiff being treated differently based on his race, the court finds that the plaintiff has failed to state a claim that he has been deprived of his right to equal protection. Likewise, the complaint contains no allegations of a Rutherford County policy regarding the use of excessive force. *See Okolo v. Metro. Gov't of Nashville*, 892 F. Supp.2d 931, 944 (M.D. Tenn. 2012); *Hutchison v. Metro. Gov't of Nashville*, 685 F. Supp.2d 747, 751 (M.D. Tenn. 2010); *Johnson v. Metro. Gov't of Nashville*, No. 3:10-cv-0589, 2010 WL 3619790, at **2-3 (M.D. Tenn. Sept. 13, 2010). Accordingly, the court finds that the complaint does not contain sufficient allegations to state a claim for municipal liability under Section 1983 against Rutherford County. The plaintiff's official capacity claims against Officer Dawson therefore must be dismissed.

## V.        Conclusion

The court has screened the complaint as supplemented pursuant to the PLRA and determined that the complaint fails to state claims under Section 1983 upon which relief can be granted except as to the plaintiff's First Amendment retaliation claim against Officer Dawson in his individual capacity. This action will proceed on that sole claim. All other claims will be dismissed.

An appropriate order will be entered.

_____
Aleta A. Trauger
United States District Judge

11